FILED'06 AUG 24 15:22USDC-ORP

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

LAURA LEE FOLLETT,

                  Plaintiff                             Civil No. 05-6225-MO

                  v.                                 OPINION AND ORDER

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

                  Defendant.

**MOSMAN, J.,**

Plaintiff Laura Follett seeks judicial review of the Social Security Commissioner's final decision denying her application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The Commissioner's final decision is AFFIRMED.

## **BACKGROUND**

Born in 1966, Ms. Follett completed high school and in 2002 and 2003 returned to

1 - OPINION AND ORDER

college. Tr. 67, 184.[1]  Between 1989 and 1999 Ms. Follett worked as a cryptologic technician in the Navy.  Tr. 101.

Ms. Follett applied for DIB on July 20, 2000.  Tr. 69.  She alleges disability since June 14, 1999, due to major depression, migraine headaches, "central hypothyroidism," asthma, "insulin-resistance type II diabetes," periodic limb movement in sleep, obsessive compulsive disorder, anxiety, and panic attacks.  Tr. 100.  She later additionally alleged disability due to Post-Traumatic Stress Disorder ("PTSD").  Tr. 508-11, 654.  After Ms. Follett's hearing before an Administrative Law Judge ("ALJ"), the ALJ found Ms. Follett "not totally credible."  Tr. 31.  The ALJ also found that Ms. Follett could return to her past relevant work.  Tr. 31.  Ms. Follett seeks review of this finding.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Social Security Act.  20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  Ms. Follett challenges the ALJ's evaluation of the evidence and his conclusions at step four.

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If she is, the claimant is not disabled.  20 C.F.R. § 404.1520(4)(i).  At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve month duration requirement.  20 C.F.R. §§ 404.1509; 404.1520(4)(ii).  If the claimant does not have such a severe impairment, she is not disabled.  *Id.*

---

[1] Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer on January 3, 2006 (Doc. #7).

2 - OPINION AND ORDER

At step three, the ALJ determines if the severe impairment meets or equals a "listed" impairment in the regulations. 20 C.F.R. § 404.1520(4)(iii). If the impairment is determined to equal a listed impairment, the claimant is disabled.

If adjudication proceeds beyond step three, the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by her impairments. 20 C.F.R. §§ 404.1520(e), Social Security Ruling ("SSR") 96-8p. The ALJ uses this information to determine if the claimant can perform work in the national economy at step five.

If proceedings reach step five, the Commissioner must determine if the claimant is capable of performing work existing in the national economy. *Yuckert*, 482 U.S. at 141-42; *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. 404.1520(a)(4)(v).

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098. If the process reaches the fifth step, the burden shifts to the Commissioner to show that jobs exist in the national economy in the claimant's RFC. *Id.* If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 404.1566, 404.1520(f).

## THE ALJ'S FINDINGS

The ALJ found that Ms. Follett's "allegations regarding her limitations are not totally credible." Tr. 31. The ALJ based this finding upon Ms. Follett's activities, inconsistencies in her testimony regarding her school attendance, and an evidential record that did not reflect her sexual harassment allegation. Tr. 25.

3 - OPINION AND ORDER

The ALJ found Ms. Follett's ability to work moderately limited by her asthma and carpal tunnel syndrome. Tr. 29. He found that her mental and psychological impairments "produce no more than 'mild' restriction in daily activities, 'moderate' difficulties in social functioning and 'mild' difficulties in maintaining concentration, persistence, and pace." Tr. 29. The ALJ evaluated Ms. Follett's RFC as follows:

> [S]he is physically able to perform medium work, she is moderately limited in her ability to do consistent keyboarding, and she should avoid concentrated exposure to pulmonary irritants; mentally, she is moderately limited in interacting with the general public, and traveling to unfamiliar places. She is able to perform a wide range of medium work, inclusive of light and sedentary levels of exertion.

Tr. 31.

At step four, the ALJ found that Ms. Follett's RFC did not preclude her from performing her past relevant work as a quality control worker or line worker. Tr. 30, 32. The ALJ solicited testimony from a vocational expert ("VE") who confirmed Ms. Follett could return to this work. Tr. 712. Relying upon VE testimony, the ALJ alternatively found at step five that Ms. Follett could work as a kitchen helper, hand packager, small products assembler, cannery worker. Tr. 30, 713. Accordingly, the ALJ determined Ms. Follett was not disabled at any time through the date of his decision. Tr. 32.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r for Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). This court must weigh "both the evidence that supports and [that which] detracts from the ALJ's

conclusion." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (internal quotation marks and citations omitted).    The reviewing court "may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).    In reviewing a credibility finding where there is objective medical evidence of the underlying impairment, the reviewing court must consider whether the Commissioner provided "clear and convincing" reasons for finding a claimant not credible. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). This court also looks for "clear and convincing" reasons in reviewing rejection of an uncontradicted treating physician's testimony. *Magallanes*, 881 F.2d at 751.    Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading.    *Id.* at 750; *see also Batson*, 359 F.3d at 1193.

## DISCUSSION

Ms. Follett contends the ALJ failed to accurately assess her RFC because the ALJ improperly discredited her testimony and improperly considered an examining psychologist's opinion.

### I.    Ms. Follett's Credibility

The ALJ's reasoning for suspecting Ms. Follett's credibility is based on inconsistencies in her testimony, inconsistencies between her daily activities and her alleged disability, and inconsistencies between her allegation of sexual harassment in support of her PTSD diagnosis and her military records. Tr. 25. The ALJ also considered the possibility of secondary gain, noting that Ms. Follett experienced "near continuous financial problems." Tr. 27.

#### a.    Credibility Analysis

The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to

5 - OPINION AND ORDER

conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). In making credibility findings, the ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). Additionally, the ALJ may employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms suffered by the claimant. *Id*.

### b.    Inconsistent Statements and Activities

The ALJ first based his credibility finding upon discrepancies between Ms. Follett's reported fears of leaving her house and her daily activities. Tr. 25-26. Ms. Follett testified at her hearing that she could not leave her house, and that she had to "lie down" for most of the day after taking her son to school. Tr. 676. The ALJ noted that Ms. Follett attended a gym, drove her son to school, participated in a women's therapy group, participated in vocational rehabilitation, and flew across the country during the period in question. Tr. 25.

Ms. Follett suggests that her gym use declined and ultimately ceased by the time of her March 2003 hearing. Pl.'s Op. Br. at 7; Tr. 676. Regardless, although physician-prescribed exercise need not be construed as substantial gainful activity, activities inconsistent with alleged limitations may be cited as evidence the claimant can engage in substantial gainful activity. *Orteza*, 50 F.3d at 750.

The ALJ also noted that Ms. Follett's reported obsessive-compulsive cleaning behavior is contradicted by her reports that her children cleaned the house. Tr. 25, 243. Such contradictory testimony may be cited in a credibility finding. *Smolen*, 80 F.3d at 1284.

6 - OPINION AND ORDER

c.       **College Attendance**

The ALJ next cited Ms. Follett's attendance and participation in community college.  Tr. 25-26.  Lane County Community College records show that Ms. Follett was enrolled in Algebra, Geometry, English, and Spanish classes, earning a  3.54 GPA for the period between Spring 2002 and Winter 2003.   Tr. 26, 184, 192-93.  This is the period during which Ms. Follett testified she could only "lie down" for most of the day after taking her children to school.  Tr. 676.  The ALJ noted that Ms. Follett apparently mislead two VA mental health practitioners about the extent of her educational pursuits.  Tr. 23, 29.  The ALJ also noted that she "seemingly attempted to minimize" her educational activities at her August 2003 hearing.  Tr. 23, 685-87.

Ms. Follett argues her attendance record showing missed Spanish classes establishes she was "unable" to attend school.  She suggests this inability to attend class supports her disability claim.  Pl.'s Op. Br. at 5.  The ALJ did not accept this reasoning.  Tr. 26.  This court agrees that absences without reason do not mitigate the contradictory testimony described above.  Though a claimant is not required to "vegetate in a dark room," evidence of substantial daily activity such as this can create a reasonable inference that the claimant's allegations as to the severity of her condition are not credible.  *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987); *Orteza*, 50 F.3d at 750.

d.       **Ms. Follett's Sexual Harassment Allegation**

The ALJ suggested that Ms. Follett's military records do not support her allegation of sexual harassment in the navy.  This court understands that sexual harassment may be difficult for a victim to report.  However, the ALJ need only show that his finding was an inference "reasonably drawn" based upon "substantial evidence."  *Batson*, 359 F.3d at 1193; *Magallanes*, 881 F.2d at 755.  Here,

the ALJ considered Ms. Follett's service records in detail. Tr. 26. He found no evidence

corroborating her sexual harassment claim during the period she claimed harassment. Tr. 26. This

finding is supported by Ms. Follett's available military personnel records. Tr. 143-63, 167-83.

     e.     **Secondary Gain**

The ALJ finally suggested that Ms. Follett's application was motivated by secondary gain.

Tr. 27. This court does not sustain such inference. By definition, applications for disability

insurance is an application for financial assistance. If desire or expectation of obtaining benefits

were sufficient to discredit a claimant, "no claimant . . . would ever be found credible." *Ratto v.*

*Sec'y of Health & Human Servs.*, 839 F. Supp. 1415 at 1428-29 (D. Or. 1993).

**II.**    **Medical Source Statements**

Ms. Follett also contends the ALJ improperly evaluated the opinions of examining

psychologists Dr. Turner and Dr. Sjodin. This argument is rejected for the reasons below.

    **a. Examining Psychologist Dr. Sjodin**

Dr. Sjodin examined Ms. Follett on November 16, 2000. Tr. 239-45. Dr. Sjodin suggested

diagnoses of panic disorder with agoraphobia, major depression, and "possible" obsessive

compulsive disorder. Tr. 244. Dr. Sjodin concluded:

> In general the claimant did not appear to be severely depressed. She
> showed mild anxiety and few outward signs of drowsiness. . . . Her
> condition is treatable, and if she continues to work with mental health
> providers through the veterans administration [sic], it is likely she
> will improve in the next 12 months, although the examiner is not able
> to say how much.

Tr. 244.

The ALJ appropriately relied upon Dr. Sjodin's report. Tr. 19-20, 25-26. The ALJ found

Dr. Sjodin's report consistent with Ms. Follett's activities of daily living. Tr. 26. Dr. Sjodin's report is also consistent with medical evidence produced by VA physicians in the record. Tr. 200-38, 247-354, 375-86, 397-435, 524-44. Ms. Follett did not mention her alleged sexual harassment to Dr. Sjodin, nor did she describe PTSD symptoms. Tr. 239-42. Dr. Sjodin did not find any suggestion of PTSD. Tr. 239-45.

### b. Examining Psychologist Dr. Turner

Ms. Follett suggests Dr. Turner's report is uncontradicted and entitled to controlling weight. Pl.'s Op. Br. at 3. This is in error. Dr. Turner examined Ms. Follett for the VA in conjunction with her application for increased VA benefits. In April 2001, Dr. Turner conducted a clinical interview and administered personality testing. This included a brief mental status exam which revealed "no evidence of cognitive or intellectual deficiencies." Tr. 516. Dr. Turner wrote an eleven page report summarizing Ms. Follett's reported symptoms and finding a diagnosis of PTSD based upon Ms. Follett's self-reported harassment in the military. Tr. 512-23. Dr. Turner noted that Ms. Follett "initially had no idea that her adverse experiences in the miliary constituted sexual harassment or military sexual trauma." Tr. 518.

Fourteen months later, in June 2003, Dr. Turner administered the Minnesota-Multiphasic Personality Inventory ("MMPI") and completed a DDS[2] Psychiatric Review Technique Form. Tr. 501-06. Dr. Follett indicated that his MMPI test results were slightly outside the "valid" range of scores, but felt that the test results substantiated his clinical evaluation conducted fourteen months

---

[2]DDS is a federally-funded state agency that makes eligibility determinations on behalf and under the supervision of the Social Security Administration pursuant to 42 U.S.C. § 421(a) and 20 C.F.R. § 404.1503.

earlier.  Tr. 502.

On the Psychiatric Review Technique Form, Dr. Turner endorsed impairments which included the highest level of severity, or impairment, in seventeen of twenty categories. Tr. 508-09. He cited diagnoses of panic attacks, dysthymia, and PTSD in support of his endorsements. Tr. 509. The severity of impairment endorsed by Dr. Turner is inconsistent with Ms. Follett's medical record produced by the veterans administration, including previous VA psychological assessments. Tr. 200-38, 247-354, 375-86, 397-435, 524-44.  Dr. Turner's report is also inconsistent with Dr. Sjodin's psychiatric evaluation.  Tr. 239, 245, 247-354.

Dr. Turner is evaluated as an examining physician.  There is no bright line rule determining the distinction between an examining and treating physician, but a treating physician has an ongoing treatment relationship with the patient and is employed to cure the patient. *Benton v. Barnhart*, 331 F.3d 1030, 1038 (9th Cir. 2003), *Magallanes*, 882 F.2d at 751.  Here, Dr. Turner was employed to evaluate Ms. Follett for the VA.  He did not make treatment recommendations and he did not prescribe medication.  Tr. 501-23.

A physician's opinion must be substantiated by objective evidence, such as clinical notes or test results. *See Batson*, 359 F.3d at 1195, *see also Connett v. Barnhart*, 340 F.3d 871, 874-75 (9th Cir. 2003). In rejecting the opinion of a contradicted treating or examining physician, the ALJ must provide "specific and legitimate reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  Here, the ALJ cited three reasons for giving Dr. Turner's report no evidentiary weight.  Tr. 29.  First, he questioned Dr. Turner's personality test results. Second, the ALJ noted that Dr. Turner's report was based on Ms. Follett's self report, which

the ALJ determined to be "not fully credible." Tr. 29. And third, the ALJ suggested Dr. Turner was "misinformed" regarding Ms. Follett's school attendance during the period in question. Tr. 29.

### *1. Personality Test Results*

Addressing Dr. Turner's personality test results, Ms. Follett suggests the ALJ should not have substituted his lay judgement for that of a psychologist. Pl.'s Op. Br. at 5. The ALJ noted that Ms. Follett's MMPI score was outside the established norm and addtionally noted that Ms. Follett's particular score is indicative of exaggerated symptoms. Tr. 29. It is true the ALJ is not competent to make medical diagnoses. However, the ALJ is responsible for evaluating the medical evidence. *Edlund*, 253 F.3d at 1156. Here, the ALJ appropriately provided specific and legitimate reasons for questioning Dr. Turner's report regarding the MMPI results.

### *2. Ms. Follett's Statements to Dr. Turner*

If a claimant is determined not to be credible, an ALJ is free to reject statements made by the claimant to her physician. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148-49 (9th Cir. 2001). Ms. Follett's statements regarding alleged sexual harassment are not supported by her medical or Navy personnel records, as discussed above. Ms. Follett also indicated to Dr. Turner that she dropped out of school in Fall 2002 due to increased panic symptoms. Tr. 509. This statement is contradicted by the record. Tr. 184, 192-93. For these reasons, the ALJ was justified in rejecting Dr. Turner's opinion because it was based upon statements made by a claimant determined not to be credible.

### *3. College Attendance*

The ALJ stated that Dr. Turner was "misinformed" regarding Ms. Follett's community college attendance. Tr. 29. Dr. Turner's Psychiatric Review Technique form indicated that Ms. Follett

11 - OPINION AND ORDER

dropped out of school due to panic attacks in the Fall 2002 quarter. Tr. 509. The ALJ correctly noted that Ms. Follett remained in school throughout the Spring 2003 quarter. Tr. 29, 184, 192-93. This period coincides with Dr. Turner's April 2003 Psychiatric Review Technique form. Tr. 510. The ALJ's observation that Ms. Follett's academic achievement is inconsistent with the degree of impairment endorsed by Dr. Turner is reasonable. This court will not overturn such inferences reasonably drawn. *Batson*, 359 F.3d at 1193.

## CONCLUSION

The Commissioner's decision that Ms. Follett does not suffer from disability and is not entitled to benefits under Title II of the Social Security Act is based upon correct legal standards and supported by substantial evidence. Therefore, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

Dated this 24 day of August, 2006.

Michael W. Mosman
United States District Judge

12 - OPINION AND ORDER